**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TY BURIN,** | ) | **CASE NO. 1:16CV77** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **GENERAL MOTORS LLC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

      This matter comes before the Court upon the Motion (ECF DKT #4) of Defendant, Ally Financial, Inc. ("Ally"), to Dismiss. For the following reasons, the Motion is granted. Since no Class Action Fairness Act claims remain, and the parties acknowledge that Plaintiff's other claims do not independently trigger federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining parties and claims. The above-captioned matter is remanded to Cuyahoga County Common Pleas Court for further proceedings.

**I. FACTUAL BACKGROUND**

      On January 12, 2015, Plaintiff, Ty Burin, entered into a three-year lease with

Defendant, Lambert Buick Pontiac GMC Inc., for a new 2015 GMC Sierra. The vehicle had an agreed-upon value of $48,511.00 and Plaintiff committed to pay a total of $24,183.79 by the end of the lease term. Lambert assigned the lease to Ally Bank Lease Trust. The Itemization of Gross Capitalized Cost (¶11) included an Ally administrative fee of $595.00. (ECF DKT #1-1). The lease also recited: "This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back." *Id*.

Plaintiff filed a Complaint, containing class action claims against Ally, in the Cuyahoga County Common Pleas Court on December 15, 2015. The matter was removed by Ally on January 13, 2016 on the basis of original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

Plaintiff purports to represent those Ohio residents who, during the six-year period prior to the filing of the Complaint, leased a vehicle from an Ally-authorized dealer and were charged an Ally administrative fee. Plaintiff asserts claims for injunctive and declaratory relief and monetary damages against Ally for violation of the Ohio Retail Installment Sales Act ("RISA") and the Ohio Consumer Sales Practices Act ("CSPA"); for civil conspiracy; and for breach of contract.

Ally filed its Motion to Dismiss on January 13, 2016; Plaintiff filed his Response on February 26, 2016; and Ally submitted its Reply on March 11, 2016.

## II. LAW AND ANALYSIS

**Civil Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept

as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of those facts is improbable ...” *Twombly*, 550 U.S. at 556.

When ruling on a motion to dismiss, a court may accept "matters outside the pleadings," but in doing so, it generally must treat the motion as a summary judgment motion under Rule 56. Fed.R.Civ.P. 12(d). However, the "court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

**Retail Installment Sales Act (RISA)**

In his Ninth Claim for Relief, Plaintiff asserts a class claim against Ally for violation of R.C. § 1317.07. Plaintiff alleges: "Ally mandates that all dealers that assign leases to it, charge this $595 administrative fee on the lease of the vehicle." (ECF DKT #1-1, ¶ 54). "An 'administrative fee' is not among such charges or fees permitted by O.A.C. [Ohio Administrative Code] 109:4-3-16(B)(21) or R.C. 1317.07." (*Id.*, ¶ 59).

R.C. § 1317.07 recites in pertinent part:

No retail installment contract authorized by section 1317.03 of the Revised Code that is executed in connection with any retail installment sale shall evidence any indebtedness in excess of the time balance fixed in the written instrument in compliance with section 1317.04 of the Revised Code, but it may evidence in addition any agreements of the parties for the payment of delinquent charges, as provided for in section 1317.06 of the Revised Code, taxes, and any lawful fee actually paid out, or to be paid out, by the retail seller to any public officer for filing, recording, or releasing any instrument securing the payment of the obligation owed on any retail installment contract. **No retail seller, directly or indirectly, shall charge, contract for, or receive from any retail buyer, any further or other amount for examination, service, brokerage, commission, expense, fee, or other thing of value.** A documentary service charge customarily and presently being paid on May 9, 1949, in a particular business and area may be charged if the charge does not exceed two hundred fifty dollars per sale. (Emphasis added).

R.C. § 1317.01 sets forth definitions of relevant terms:

> (A) "Retail installment sale" includes every retail installment contract to sell specific goods, every consumer transaction in which the cash price may be paid in installments over a period of time, and every retail sale of specific goods to any person in which the cash price may be paid in installments over a period of time.  \*\*\*
>
> (F) "Buyer" means a person that buys or agrees to buy goods or any legal successor in interest of such person.
>
> (G) "Retail buyer" means a buyer that is a party to a retail installment sale, or any legal successor in interest of such person.
>
> (H) "Seller" means a person who sells or agrees to sell goods.
>
> (I) "Retail seller" means a seller that is a party to a retail installment sale. \*\*\*
>
> (K) "Cash price" means the price measured in dollars, agreed upon in good faith by the parties as the price at which the specific goods which are the subject matter of any retail installment sale would be sold if such sale were a sale for cash to be paid upon delivery instead of a retail installment sale. "Cash price" may include sales taxes. \*\*\*
>
> (P) "Consumer transaction" means a sale, **lease**, assignment, or other transfer of an item of goods, or a service, except those transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, . . . For purposes of this chapter only, a "consumer transaction" does not include a lease-purchase agreement.

The Court finds that the relationship between Ally and Plaintiff does not fall under RISA.  Ally is not a "seller" of a vehicle and Plaintiff is not a "buyer" of a vehicle as defined in R.C. § 1317.01.  Ally provided financing but did not sell or agree to sell any goods such as cars.  Moreover, Plaintiff did not buy or agree to buy a car.  As was noted previously, the agreement that Plaintiff and Lambert executed makes clear that "[t]his is an agreement to lease a vehicle.  This is not a purchase agreement.  **You are not buying the vehicle**." (Emphasis added).  (ECF DKT #1-1 & #4-1).

Although "consumer transaction" means a lease for purposes of RISA (§ 1317.01(P)), the transaction at issue is not a retail installment sale, i.e., one in which the cash price is paid in installments over a period of time (§ 1317.01(A) & (K)). The "agreed-upon value" of the 2015 GMC Sierra is $48,511; but the total of payments made by Plaintiff at the end of the three-year lease term would be $24,183.79. Thus, the amount of the "cash price" would never be reached.

R.C. § 1317.032 provides for derivative RISA liability based upon the misconduct of other actors; but Plaintiff concedes that he is not pursuing such a claim because it is "simply not relevant here." (ECF DKT #18, p.8). Consequently, the Court need not reach the merits of Ally's contention that there can be no derivative liability where the contract lacks the FTC Holder Rule language.

In closing, Plaintiff's Ninth Claim for Relief does not contain sufficient factual matter, taken as true, to state a plausible claim against Ally for violation of RISA.

**Consumer Sales Practices Act (CSPA)**

R.C. § 1345.02(A) reads:

No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

R.C. § 1345.03(A) recites:

No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

R.C. 1345.01(C) defines "supplier" as follows:

"Supplier" means a seller, lessor, assignor, franchisor, or other person engaged

-6-

in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

In his Tenth Claim for Relief, Plaintiff asserts: "Ally mandated that Lambert and all other dealers it takes assignments of leases [from] impose an administrative fee which is a violation of R.C. 1317.07." (ECF DKT #1-1, ¶ 130). "Such a violation of R.C. § 1317.07 has been determined by courts of this state to constitute unfair, deceptive and unconscionable acts or practices which violate R.C. § 1345.02 or R.C. § 1345.03 . . . [t]hus, Defendant committed violations of the CSPA." (*Id*., ¶¶ 131-132).

Under the clear language of the applicable CSPA statutes, Ally is not a supplier. An assignee of the contract who provided financing for the supplier/seller (i.e., the auto dealer) is simply not subject to the CSPA. *Jenkins v. Hyundai Motor Financing*, 389 F.Supp.2d 961, 970 (S.D.Ohio 2005).

Moreover, as discussed above, Plaintiff's RISA claim fails; and therefore, RISA cannot be an independent basis for Ally's liability under the CSPA.

In his Eleventh Claim for Relief, Plaintiff alleges that Lambert and all other dealer-lessors that assign leases to Ally, charge a separate administrative fee on their SmartLeases at Ally's direction, which is in violation of O.A.C. 109:4-3-16(B)(21) <u>Advertisement and Sale of Motor Vehicles</u>. Plaintiff further alleges that a violation of O.A.C. 109:4-3-16(B)(21) constitutes an unfair, deceptive and unconscionable act or practice under R.C. § 1345.02 or R.C. § 1345.03. O.A.C. 109:4-3-16 reads in part as follows:

> (B) It shall be a deceptive and unfair act or practice for a **dealer, manufacturer, advertising association, or advertising group**, in connection with the advertisement or sale of a motor vehicle, to:

\* \* \* (21) **Advertise** any price for a motor vehicle unless such price includes all costs to the consumer except tax, title and registration fees, and a documentary service charge, provided

such charge does not exceed the maximum documentary service charge permitted to be charged pursuant to section 1317.07 of the Revised Code.

As Ally properly points out, Plaintiff does not allege that Ally is a dealer, manufacturer, advertising association, or advertising group – that is, one of those entities subject to the regulation. Moreover, Plaintiff's allegations are that Lambert and other dealers, at Ally's direction, **charge** a prohibited administrative fee. O.A.C. § 109-4-3-16(B)(21) does not prohibit charging an administrative fee in a lease; rather, it requires a dealer like Lambert to include a fee in an advertised lease price. Plaintiff's Complaint makes no allegations about the advertised lease price for his 2015 GMC Sierra. The Court finds that the Eleventh Claim for Relief under the CSPA does not set forth sufficient facts to support a plausible cause of action against Ally.

Ally offers the defense that, according to Plaintiff's own allegations, Ally is a "financial institution" which is exempt under RISA and the CSPA. Plaintiff disputes that proposition and submits Ally's 10-k securities filing to demonstrate that the bank exemption does not apply. However, because the Court holds that the express statutory language in R.C. Chapters 1317 and 1345 regarding "sellers" and "suppliers," and the wording of O.A.C. 109:4-3-16(B)(21) focusing on advertising, both exclude Ally from liability, it is not necessary to address the viability of Ally's defense.

**Civil Conspiracy**

Plaintiff's Twelfth Claim for Relief alleges "Civil Conspiracy of Ally and Ohio Ally Authorized Dealer-Lessors to Violate the O.A.C. 109:4-3-16(B)(21) and R.C. 1317.07 by committing Unconscionable, Unfair and Deceptive Acts under the CSPA." Specifically, this Count (ECF DKT #1-1, p.25) recites:

-8-

> 145. Ally and Ohio Ally Authorized Dealer-Lessors, including Lambert Buick GMC, maliciously combined to injure Plaintiff and all others similarly situated.
>
> 146. At Ally's direction, these Dealer-Lessors, authorized to provide lease financing through Ally were required by Ally to, insert a $595 or greater administrative fee into the Lease Agreement for Mr. Burin and other class members.
>
> 147. The inclusion of such an administrative fee in lease agreement was in violation of O.A.C. 109:4-3-16(B)(21) and R.C. 1317.07, which prohibit this separate charge, not included in the price of the vehicle.
>
> 148. The inclusion of this administrative fee increased the capitalized cost of the vehicles leased and resulted in **additional interest paid**. (Emphasis in original).

In *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011), the Sixth Circuit held:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

As the Court has already determined, Ally is not individually liable for violations of RISA, CSPA or O.A.C. 109:4-3-16(B)(21). Ally is not a dealer, seller or supplier; and the relationship between Ally and Plaintiff is not a "retail installment sale" as that term is defined in R.C. § 1317.01.

Plaintiff argues:

> Even if Ally is not directly liable under the CSPA, the underlying unlawful act is the lessor's (Lambert Chevrolet) act of including the Administrative Fee of $595 in the capitalized cost of the vehicle which is prohibited by OAC: 109:4-3-16(B)(21). Because Ally required and directed Lambert to charge the

> Administrative fee by virtue of its leasing program, subjects it to liability for conspiracy.  Contrary to Ally's assertion, it cannot avoid liability for conspiracy to violate the CSPA when it acts in a manner that requires the lessor's [sic] to violate the regulations of the CSPA.  (ECF DKT #18, p.15).

Plaintiff continues:

> . . .Ally did not have to violate the CSPA to be liable for conspiring to violate that same statute.  It was sufficient that Lambert Chevrolet and other Ally leasing dealers violated the statute by charging an administrative fee prohibited by the Ohio Administrative Code.  Their malicious combination effectuated the civil conspiracy.  (ECF DKT #18, p.16).

In essence, Plaintiff is arguing that its Complaint sets out the existence of a single plan, that Ally shared in that shared objective, and that the overt act of charging the illegal fee was committed by dealers like Lambert at the direction of Ally, causing injury to Plaintiff and other members of the class.  However, O.A.C. 109:4-3-16(B)(21) requires that any *advertised* motor vehicle price include all costs except taxes, registration and license.  The Court is unable to find any allegations in Plaintiff's Complaint that Ally conspired with Lambert, or any other of its dealer-lessors, to require them to *advertise* a lease price that did not include the administrative fee.  There are absolutely no allegations referencing advertising; and thus, no allegations demonstrating violation of the Ohio Administrative Code section at issue.

Therefore, the Complaint, and specifically the Twelfth Claim for Relief, lack sufficient facts to support a plausible cause of action against Ally for Civil Conspiracy.

**Breach of Contract**

In his Thirteenth Claim for Relief, Plaintiff alleges: "As Ally charged $595 as an administrative fee prohibited by O.A.C. 109:4-3-16(B)(21) and R.C. 1317.07 and as all contracts executed in Ohio must comply with Ohio law, Ally breached its contract with Mr. Burin and the other class members."  Ally contends, and the Court agrees, that Ally did not

-10-

breach the contract because Ally is not subject to RISA or CSPA, the lease is not covered by RISA, and Ally has not violated O.A.C. 109:4-3-16(B)(21).  In his Response Brief (ECF DKT #18), Plaintiff does not address the breach of contract claim nor these challenges to it.  Therefore, the Court considers the claim abandoned; and Ally's Motion to Dismiss the Breach of Contract Claim is granted as unopposed.

**Amending the Complaint**

At page 2 of his Response Brief (ECF DKT #18), Plaintiff says: "To the extent that Plaintiff's allegations could be clarified by an amended pleading, Plaintiff will respectfully move for leave to present one."  Later, at footnote 2 on page 10 of the same Brief, Plaintiff states: "To the extent that this section relies on material such a [sic] Ally's SEC filings and web page that does not appear on the face of the complaint in this action, Plaintiff could easily prepare an amended filing adding allegations consistent with these documents and stands ready to do so."

The Sixth Circuit's disfavor of an informal request instead of a properly-filed motion for leave to amend was made clear in *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000):  "What plaintiffs may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (quoting *Begala, supra*).  "*Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies."  *Begala*, 214 F.3d at 784 (emphasis in original).  The supposition that this Court should "rescue" Plaintiff "by *sua sponte* offering leave to amend the complaint is simply misplaced."  *Total*

*Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008).

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #4) of Defendant, Ally Financial, Inc. ("Ally"), to Dismiss is granted. Since the class claims against Ally under CAFA are dismissed, and the parties acknowledge that Plaintiff Ty Burin's other claims do not independently trigger federal court jurisdiction (ECF DKT #21, p.3), the Court declines to exercise supplemental jurisdiction over the remaining parties and claims. The above-captioned matter is remanded to Cuyahoga County Common Pleas Court for further proceedings.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  April 14, 2016**